## CIRCUIT COURT OF SPOTSYLVANIA COUNTY

Susan Zavaglia

v.

Salvatore Zavaglia

### Case No. C-94-31

BY JUDGE WILLIAM H. LEDBETTER, JR.

### December 22, 1994

The question presented in this divorce suit is whether the parties' property settlement agreement, or at least the court's previous ratification and approval of it, can be vitiated because of the husband's post-agreement misconduct.

### *Facts*

Mrs. Zavaglia instituted this suit on January 26, 1994, seeking a divorce on the ground of cruelty. In her pleading, the wife cited various acts of disruption, violence, threats, and other problems that allegedly occurred before Mr. Zavaglia's departure on January 4, 1994. Three children were born of the marriage, two of whom are still minors residing with Mrs. Zavaglia in the marital home. By the time the divorce suit was filed, Mr. Zavaglia had moved to Connecticut.

A protective order was entered on January 26, 1994, and a pendente lite hearing was scheduled for February 10, 1994. That hearing was cancelled and on February 16, 1994, the parties executed a property settlement agreement addressing matters pertaining to custody, support, and property division. On March 24, 1994, both parties asked the court to ratify and approve the agreement, which it did by order of that date.

Mr. Zavaglia was served with process on April 27, 1994. Although he has filed no responsive pleading in the case, it is conceded that he has been (and still is) represented by counsel in this litigation.

Shortly after the property settlement agreement was executed, Mrs. Zavaglia went to Connecticut to transact business with her husband regarding certain terms of the agreement. According to Mrs. Zavaglia's pleadings, Mr. Zavaglia shot Mrs. Zavaglia, resulting in amputation of her left leg and medical costs exceeding $200,000.00.

Mrs. Zavaglia filed a motion to reconsider and vacate the court's earlier approval of the property settlement agreement. She claims that she was gainfully employed at the time she signed the agreement but has been unable to work since her husband shot her and owes substantial debts as a result of his assault. Therefore, she argues, the court should adjudicate support and property division in a manner more favorable to her than the agreement provides.

*Decision*

The agreement that the parties signed on February 16, 1994, gave sole custody of the two minor children to the wife, with reasonable visitation to the husband. The husband agreed to pay $450.00 per month child support, increased to $550.00 per month in July, 1994. In addition, the husband would maintain the children on his employer's medical coverage plan. Income tax returns and exemptions for dependents were addressed. Mrs. Zavaglia waived spousal support and waived any claim in her husband's pension or retirement benefits. The parties agreed to list the marital home for sale and to divide the proceeds equally. They agreed that Mrs. Zavaglia could remain in the home until it sold, provided she pay all costs of maintenance, including the mortgage, and in any event she would vacate by July 1, 1994. The parties' tangible personal property was equally divided. A savings account of $22,500.00 was transferred to the husband except for $12,000.00 paid from that fund to the wife on January 4, 1994. Each party is to be responsible for his or her own debts.

Mrs. Zavaglia concedes that at the time the agreement was negotiated and signed, there existed no circumstance that would permit the court to void the agreement. Nevertheless, she argues, the court should refuse to enforce the agreement notwithstanding its earlier approval because of the husband's misconduct.

At a hearing on Mrs. Zavaglia's motion on December 20, 1994, Mr. Zavaglia (by counsel) argued that the court has no authority to take further

action regarding the agreement since it has already approved it at the request of both parties. Further, he points out, Virginia Code § 20-109 provides that a court can make no order of spousal support or property division that is inconsistent with a valid property settlement agreement filed with the court.

Virginia Code § 20-109.1 authorizes the court to affirm, ratify, and incorporate by reference in its final decree, *or by decree prior to* (or subsequent to) *the final decree*, any valid agreement between the parties. In such circumstance, the agreement becomes a part of the decree for enforcement purposes. On joint motion of the parties, this court has done that. Thus, the agreement has been approved and made a part of an interlocutory decree. Can the court vacate its approval of the agreement and refuse to enforce the agreement in light of Mr. Zavaglia's subsequent misconduct? Since the decree of March 24, 1994, is not a final decree — this divorce suit is still pending — the question is answered in the affirmative. However, if the court were to vacate its earlier approval of the agreement and refuse to incorporate the agreement in the final decree of divorce, the court is still faced with the provisions of § 20-109 which prohibit the court from entering any decree for spousal support or property division "except in accordance with" the agreement.

The basic elements required for a valid property settlement agreement are the same as those applicable generally to contracts. This agreement is clear, definite, and complete; it is written and signed by the parties; there is no suggestion that either party was incompetent at the time or that either party was the victim of fraud or coercion; and there is no claim that its terms are unconscionable as circumstances existed at the time. In fact, as noted above, the agreement was reached during the pendency of this litigation and while both parties were represented by counsel.

Therefore, the agreement is "valid"; further, the agreement has been "filed" with the court, thereby triggering the prohibition in § 20-109 against entering orders inconsistent with its terms. It follows that even if the court were to vacate its March 24, 1994, order approving the agreement, it could enter no order pertaining to spousal support or property division inconsistent with its terms. For that reason, the court, while extremely sympathetic to Mrs. Zavaglia's position, holds that no useful purpose could be served by vacating that order.

It should be noted that Mrs. Zavaglia is not without a remedy. If her financial situation has materially changed, she may seek child support in an amount in excess of that called for in the agreement. It is elementary

that the court is not bound by the parties' agreement with regard to matters pertaining to the care and support of minor children. Further, Mrs. Zavaglia may pursue an action against her husband for the infliction of her injuries and impress his interest in the marital property with a lien for any judgment she might be awarded.

For the reasons explained, the court cannot grant the relief sought by Mrs. Zavaglia.

### December 21, 1995

This case is before the court again for a determination of child support.

*Facts*

The parties were married in 1971 and separated in 1994. Three children were born of the marriage, two of whom are still minors residing with Mrs. Zavaglia in the marital home.

Mrs. Zavaglia instituted this suit for divorce on January 26, 1994, shortly after the parties separated. A protective order was entered and a pendente lite hearing was scheduled. On February 16, 1994, the parties executed a property settlement agreement that resolved all matters pertaining to their property, child custody, and support. On joint motion of the parties, the court ratified and approved the property settlement agreement on March 24, 1994, pursuant to Virginia Code § 20-109.1.

Mr. Zavaglia moved to Connecticut. After the property settlement agreement was ratified, Mrs. Zavaglia went to Connecticut to transact business with Mr. Zavaglia regarding certain items in the agreement. Mr. Zavaglia shot Mrs. Zavaglia, resulting in amputation of her left foot and medical expenses in excess of $210,000.00.

Thereafter, Mrs. Zavaglia moved the court to vacate its March 24, 1994, order and to void the property settlement agreement because of Mr. Zavaglia's misconduct. The court issued an opinion letter on December 22, 1994, with regard to that issue.

Evidence was taken by depositions after which, on June 19, 1995, Mrs. Zavaglia was awarded a divorce on the ground of one-year separation. Custody of the two minor children was awarded to Mrs. Zavaglia. The property settlement agreement was again ratified and approved and incorporated in the divorce decree. The issue of child support was reserved.

Additional depositions were taken on the issue of child support. On December 18, 1995, the parties, by counsel, argued their respective positions, and the court took the matter under advisement.

*Decision*

The parties stipulate that Mr. Zavaglia's monthly gross income is $1,745.00 and Mrs. Zavaglia's monthly gross income is $3,854.83, for a combined monthly gross income of $5,599.83. (These figures, presented on work sheets at the December 18, 1995, hearing, are not entirely consistent with the deposition evidence. The reasons for the differences, however, are explainable. The court will use the work sheet figures because they are the most recent and are agreed.) The total monthly basic child support obligation, applying the guidelines in § 20-108.2, is $1,126.00. Applying the guidelines, Mr. Zavaglia's presumptive child support obligation is $360.00.

Mrs. Zavaglia asks the court to make an award almost five times the presumptive amount, primarily because of the enormous medical debts resulting from her husband's assault.

Mr. Zavaglia argues that the statutory presumption has not been rebutted, and that Mrs. Zavaglia cannot convert a claim for child support into a tort claim against Mr. Zavaglia.

The financial resources and debts of the parties are factors that the court considers in determining child support. See § 20-108.1(B)(11).

Another factor to be considered is "a written agreement between the parties which includes the amount of child support." Section 20-108.1(B)(16). Yet another factor is a "pendente lite decree . . . ." Section 20-018.1(B)(17).

In the separation agreement, Mr. Zavaglia agreed to pay $550.00 per month as child support beginning July 4, 1994. The agreement was ratified and made a pendente lite order on March 24, 1994.

The court agrees with Mrs. Zavaglia that the circumstances of this case justify a deviation from the guidelines. Mrs. Zavaglia's financial obligations, resulting from the shooting incident, are considerable. Although insurance carriers have paid for most of these bills, and may pay more, a balance in excess of $80,000.00 remains. Future medical expenses are probable.

The court also agrees with Mr. Zavaglia that child support cannot be used as a device by which Mrs. Zavaglia recovers damages from Mr. Zavaglia caused by his assault on her. Despite her injuries, she is employed now and her income is two and a half times his income. In fact, Mr. Zavaglia's income is largely social security benefits. (He is presently incarcerated in Connecticut awaiting trial on criminal charges arising out of

the shooting, having violated a condition of his pretrial electronic monitoring program.)

There is no reason why Mr. Zavaglia cannot comply with the terms of the property settlement agreement in which he agreed to pay $550.00 per month. That factor, combined with the other circumstances noted above, justifies a deviation from the statutory presumption. Accordingly, the court awards child support in the amount of $550.00 per month to Mrs. Zavaglia commencing January 10, 1996, and payable on or before the tenth day of each month thereafter.

The uncontradicted evidence establishes that Mr. Zavaglia is in arrears $3,500.00 as of December 1995. Therefore, upon her request, judgment will be granted to Mrs. Zavaglia in that amount for child support arrearage as of December 18, 1995.

All future matters pertaining to custody, visitation, and support will be transferred to the Spotsylvania County Juvenile and Domestic Relations District Court.